**\*\* NOT FOR PUBLICATION \*\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————— :
PIERRE H. SIMON,                                     :
                                                     :
                        Plaintiff,                   :
                                                     :   Civ. Action No. 13-6290 (FLW)(LHG)
            v.                                       :
                                                     :                 **OPINION**
SHORE CAB, LLC, AFZAL MOHAMED,                       :
individually and in his official capacity;           :
MUSTAQ MOHAMED, individually and in                  :
his official capacity; MOHAMMED KHAN,                :
individually and in his official capacity            :
                                                     :
                        Defendants.                  :
———————————————————— :

## WOLFSON, United States District Judge:

Presently before the Court is the Motion of Shore Cab, LLC, ("Shore Cab"), Afzal

Mohamed, Mustaq Mohamed, and Mohammed Khan (the "Individual Defendants") (collectively,

"Defendants"), to dismiss certain claims brought by Pierre H. Simon ("Plaintiff"), pursuant to Fed.

R. Civ. P. 12(b)(6). Plaintiff filed this action on November 22, 2013, alleging that his former

employer, Shore Cab, as well as his former supervisors and the co-owners of Shore Cab, Afzal

Mohamed, Mustaq Mohamed, and Mohammed Khan, in their individual and official capacities,

engaged in discrimination against Plaintiff on the basis of his race and religion, retaliated against

Plaintiff, and created a hostile work environment in violation of Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e, 42 U.S.C. 1981 ("Title VII"), the New Jersey Law Against

Discrimination ("NJLAD"), and the New Jersey Conscientious Employee Protection Act, N.J.S.A. § 34:19-1 et seq. ("NJCEPA" or "CEPA").

For the reasons set forth below, this court finds that i) whether Defendant Shore Cab employs 15 or more people is a question of fact that may not be decided at the stage of a motion to dismiss, ii) Title VII of the Civil Rights Act does not provide a cause of action against the individually named Defendants, and iii) by raising claims under NJCEPA, Plaintiff has waived his substantively identical claims under the NJLAD. Accordingly, Defendants' Motion to Dismiss certain counts of the Complaint is GRANTED IN PART and DENIED IN PART.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed the instant action on November 22, 2013, seeking injunctive and equitable relief, as well as compensatory and punitive damages. Compl. at ¶ 1. Plaintiff alleges that his former employer, Shore Cab, and former supervisors, Afzal Mohamed, Mustaq Mohamed, and Mohammed Khan, engaged in discriminatory and retaliatory practices against Plaintiff on the basis of his race, Haitian Black, and his religion, Christianity, creating a hostile work environment and violating Title VII of the Civil Rights Act of 1964, the NJLAD, and NJCEPA. *Id*. at ¶¶ 1, 13, 29-30.

Plaintiff is alleged to be a long-term taxi-driver-employee of Shore Cab, a Long Branch, New Jersey taxi company alleged to employ "approximately 110 employees." Plaintiff is one of two Shore Cab employees of Haitian descent, and "the one who has been demonstrative of his religion and has been penalized for such outspokenness." *Id*. at ¶ 13, 16. Plaintiff alleges that Defendants subjected Plaintiff to "relentless and repeated expressions of overt, racially derogatory

2

behavior," which created a work environment "saturated with bigotry, intimidation, scorn, and abuse." *Id*. at ¶ 18. In connection with this behavior, Plaintiff alleges that Defendants granted better access to financial compensation to "non-Black employees," while denying that access to "Black employees." *Id*. at ¶ 17. This behavior, Plaintiff alleges, created an environment that degraded Plaintiff due to his race. *Id*. at ¶ 18. Such an environment enabled non-Black employees to engage in "outrageous discriminatory conduct" against Black employees without fear of retribution. *Id*. at ¶ 19. Additionally, according to Plaintiff, the environment allows employees to retaliate against individuals who "speak out against unfair treatment . . . and those who oppose the discriminatory practices at Shore [Cab]." *Id*. at ¶¶ 11, 19.

Plaintiff alleges that Shore Cab lacks a corporate policy on diversity of workforce, a handbook delineating practices pertaining to discrimination or complaints, and an "effective procedure for training employees . . . in the deterrence, identification, prevention, and reporting" of harassment or discriminatory behavior. *Id*. at ¶¶ 11-12, 21. Moreover, even if corporate best practices or policies were in place, Plaintiff asserts that such practices were not applied uniformly to all employees, went unenforced, or were not clearly disseminated to employees by Defendants. *Id*. at ¶¶ 17, 20.

In support of his assertions, Plaintiff points to specific examples of Defendants' behavior. Plaintiff, as a Christian, occasionally displayed his faith outwardly by "wearing caps demonstrating his faith." *Id*. at ¶¶ 29-30. In one instance, Plaintiff wore a cap displaying the message "Jesus is my boss," to which Defendants allegedly stated "Go eat your fucking hat." *Id*. at ¶ 30. As to Plaintiff's race, he alleges that he "heard employees refer to Black persons as 'Niggers'" on the taxi radio. *Id*. at ¶ 31. Defendants also allegedly gave Plaintiff poor job performance references compared to those given to "his non-Black counterparts." *Id*. at ¶ 23.

3

Plaintiff also alleges that Defendants discriminated against him in awarding compensation by excluding him from fares, giving his fares to other drivers, and using dispatchers to overlook "his turn for fares." Plaintiff alleges that this conduct denied him equal access to the taxi customer base and reduced his ability to earn a profit. *Id*. at ¶¶ 23-24, 28. On November 10, 2009, Plaintiff alleges he complained to Defendants about his loss of cab fares through the denial of calls by dispatchers, and made numerous complaints to Defendants about "the abuse of process" that led to the loss of fares. *Id*. at ¶¶ 26, 28.

On another occasion, Plaintiff alleges that Defendant Afzal Mohamed "entered plaintiff's cab and destroyed the dashboard of his vehicle. *Id*. at ¶ 32. Plaintiff asserts that Mr. Mohamed told Plaintiff that if he filed criminal charges against him, Mr. Mohamed would terminate Plaintiff from his employment with Shore Cab. *Id*. at ¶ 33. However, if Plaintiff did not, and "continue[d] to accept the hostility," he could retain his employment. *Id*. On May 5, 2012, Plaintiff "brought charges" against Mr. Mohamed in the Long Branch Police Department. *Id*. at ¶ 34.

Defendants now move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss certain counts of the Complaint. Specifically, Defendants seek to dismiss Plaintiff's claims arising under Title VII — Counts I, VI, IX, XVI, XX, and XXII of the Complaint — as "Defendants do not employ 15 or more employees," and "Title VII does not provide for individual liability." Def.'s Mot. at p. 7-8. Additionally, Defendants seek to dismiss Plaintiff's claims arising under the NJLAD — Counts III, IV, VII, X, XIII, XV, XVII, XVIII (incorrectly labeled in the Complaint as a second "XVII," *Id*. at ¶¶ 161-63), and XXI of the Complaint — as such claims are "waived under the New Jersey Conscientious Employee Protection Act." Def.'s Mot. at 8.

## II. 12(b)(6) STANDARD OF REVIEW

In reviewing a motion to dismiss on the pleadings, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). As such, a motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action but merely tests the legal sufficiency of the complaint. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("[a] pleading that states a claim for relief . . . must contain a short and plain statement of the claim showing the pleader is entitled to relief"). In other words, to survive a Fed R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

However, "the tenet that a court must accept as true all the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Plaintiff need not meet any particular "probability requirement" but must show that there is "more than a sheer possibility that the defendant has acted unlawfully." *Id.* (citing *Twombly,* 550 U.S. at 556). Moreover, "context matters in notice pleading" and a complaint will fail to state a claim if the "factual detail in the claim is so underdeveloped that it does not provide a defendant with the type of notice of a claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232.

5

When presented with a motion to dismiss, the court should engage in a two-part analysis. *Fowler,* 578 F.3d at 210. First, the court must separate the factual and legal elements of each claim. *Id.* It "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210–11 (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 667 (2009)). Second, the court must determine whether the facts alleged are "sufficient to show that the plaintiff has 'a plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal,* 556 U.S. at 679). The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. In other words, for the plaintiff to prevail, the "complaint must do more than allege the plaintiff's entitlement to relief;" it must "'show' such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citing *Phillips,* 515 F.3d at 234–35); *see Covington v. International Ass'n of Approved Basketball Officials,* 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to 'set out in detail the facts upon which he bases his claim.' . . . The pleading standard 'is not akin to a 'probability requirement,'" . . . to survive a motion to dismiss, a complaint merely has to state a 'plausible claim for relief.'" (citations omitted)).

## III. LIABILITY OF DEFENDANT SHORE CAB UNDER TITLE VII

At the outset, Defendants contend that because they certify that Defendant Shore Cab does not employ more than fifteen employees, Defendant Shore Cab is not subject to Title VII's provisions, and dismissal as to the Counts against it (Counts I, VI, and IX) arising under that Title is warranted. This argument, as explained below, is unavailing at the motion to dismiss stage. Accordingly, the Court denies Defendants' Motion concerning these claims.

Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks

in the current or preceding year." 42 U.S.C. § 2000e(b). An "industry affecting commerce" includes "any governmental industry, business, or activity." *Id.* § 2000e(h). A "person" includes "one or more . . . governments, governmental agencies, [or] political subdivisions . . . ." *Id.* § 2000e(a).

The Third Circuit has explained that a "significant purpose of the fifteen-employee minimum in the Title VII context is to spare small companies the considerable expense of complying with the statute's many-nuanced requirements. This goal suggests that the fifteen-employee minimum should be strictly construed." *Nesbit v. Gears Unlimited, Inc.,* 347 F.3d 72, 85 (3d Cir. 2003) (internal citation omitted). Further, in *Nesbit,* the Third Circuit found that Title VII's "fifteen or more" employee requirement is a "substantive element" of a Title VII claim, such that a summary judgment standard—rather than a motion to dismiss standard—must be employed when litigants dispute whether this threshold is satisfied, as have the parties to this dispute. *Id.* at 84. Indeed, "[t]he precise contours of an employment relationship can only be established by a careful factual inquiry." *Graves v. Lowery,* 117 F.3d 723, 729 (3d Cir. 1997). *See also Thompson v. U.S. Airways, Inc.,* 717 F. Supp. 2d 468, 479 (E.D. Pa. 2010). Moreover, when the employment relationship is ambiguous or uncertain, such a fact-intensive analysis is essential, and the plaintiff's claims should not be dismissed at the pleading stage. *Graves,* 117 F.3d at 729.

Defendants chose to bring the present Motion under the standard of Rule 12(b)(6). As such, Plaintiff is entitled to have all reasonable factual inferences from his pleadings drawn in his favor. The Complaint unambiguously alleges that Defendant Shore Cab employs more than 15 employees. Compl. at ¶ 10. Accordingly, the Court will not decide Defendants' factual challenge at the motion to dismiss stage.

By way of further example, the facts of this case are similar in all relevant respects to those in *Gustovich v. St. Clair Hosp., Inc.*, No. 07-CV-1670, 2008 WL 1840747, at *1 (W.D. Pa. Apr. 23, 2008), where the defendant-employer moved to dismiss Plaintiff's Title VII claims under Fed. R. Civ. P. 12(b)(6), relying solely upon declarations that it employed fewer than fifteen employees. *Id*. The Court denied the defendant's motion in *Gustovich* because it was "premature," as the plaintiff had adequately pleaded in his complaint that defendant employed more than fifteen employees "which must be taken as true for the purpose of ruling on a motion to dismiss." *Id*. Like the facts in *Gustovich*, Plaintiff in this matter has alleged facts—that Defendant "has approximately 110 employees," Compl. at ¶ 10—which must be taken as true by the Court at this stage. *See Phillips,* 515 F.3d at 233. Thus, as Plaintiff's allegations identify Defendant as an employer under Title VII, Counts I, VI, and IX, all raised against Shore Cab, have been sufficiently pleaded to survive Defendants' Motion to Dismiss. *See id.*; 42 U.S.C. § 2000e(b).[1] The factual accuracy of Plaintiff's allegations is a matter that may be challenged on summary judgment, or decided at trial. At this time, Defendants' Motion to Dismiss Counts I, VI, and IX is DENIED.

---

[1]   In his Reply Brief, Plaintiff argues that *Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440 (2003) stands for the proposition that the calculation of how many employees Defendants retain cannot be decided at this stage. In *Clackamas,* the United States Supreme Court considered whether the shareholder-directors of a professional corporation should be counted as employees in determining whether the business entity met the threshold number of employees, and thereby qualified as an employer under the Americans with Disabilities Act. 538 U.S. at 442. While the Court can glean that Plaintiff attempts to utilize this case as an example of the extensive factual inquiry into how many employees Defendants retain required by Title VII, the Court simply finds *Clackamas* inapposite to the facts of the instant action. This is, however, without consequence as Plaintiff has validly pleaded facts that, taken as true, are sufficient to survive Defendants' Motion.

8

**IV. LIABILITY OF DEFENDANTS AFZAL MOHAMED, MUSTAQ MOHAMED, AND MOHAMMED KHAN UNDER TITLE VII**

Third Circuit jurisprudence is clear that Title VII does not subject individual supervisory employees to liability: "Congress did not intend to hold individual employees liable under Title VII." *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1078 (3d Cir. 1996); *see also Newsome v. Admin. Office of the Courts of the State of New Jersey,* 51 F. App'x 76, 79 n.1 (3d Cir. 2002) ("it is settled that Title VII does not provide for individual liability"); *Emerson v. Thiel Coll.,* 296 F.3d 184, 190 (3d Cir. 2002) ("individual employees are not liable under Title VII") (citing *Sheridan,* 100 F.3d 1061). Thus, to the extent that, under Counts XVI, XX, and XXII, Plaintiff alleges that the Individual Defendants are liable in their *individual capacities* for intentional discrimination, creating a hostile work environment, and retaliation against Plaintiff, the Counts are dismissed. *See* Compl. at ¶¶152-55, 174-83, 194-203; *Sheridan,* 100 F.3d at 1078.

Furthermore, to the extent that these Counts are alleged against the Individual Defendants in their official capacities, they must likewise be dismissed. "Title VII provides for liability against employers, *not supervisors.* Naming a supervisor as a defendant in his official capacity is redundant especially when . . . the employer is also named as a Defendant." *Stallone v. Camden Cnty. Technical Sch. Bd. of Educ.,* No. 12-CV-7356 RBK/JS, 2013 WL 5178728, at *1, *6-7 (D.N.J. Sept. 13, 2013) (emphasis added). While the Third Circuit has not decided the issue directly, it has upheld the reasoning of the lower courts that official capacity suits under Title VII are barred as redundant. The Third Circuit affirmed the district court in *Foxworth v. Pa. State Police,* No. 03-CV-6795, 2005 WL 840374, at *4 (E.D. Pa. 2005) *aff'd* 2007 WL 295358 (3d. Cir. 2007), after the lower court dismissed plaintiff's Title VII racial discrimination claims against individual employees in their official capacities where the plaintiff had already sued his employer

for those same Title VII claims. The district court explained that "because the only proper defendant in a Title VII case is the 'employer,' pursuing such claims against individuals in their official capacities would be redundant." *Id.* (citing *Kim v. City of Philadelphia,* No. 96-CV-5409, 1997 WL 277357, at *1 (E.D. Pa. 1997)).[2]

Moreover, the courts in this District have consistently found official capacity suits against individual supervisory employees to be barred under Title VII. *See Schanzer v. Rutgers Univ.,* 934 F. Supp. 669, 678 n. 12 (D.N.J. 1996) (holding that "[a] suit against a supervisory employee in her official capacity is a suit against the individual in name only; it operates in all respects as a suit against the employer," and that "[i]f the defendant is not plaintiff's employer, . . . it is irrelevant whether that person was acting in an official or individual capacity, for a Title VII suit may not be properly maintained against the individual."); *accord Galm v. Gloucestor Cnty. Coll.*, No. 06-CV-3333 NLH, 2007 WL 2442343 (D.N.J. Aug. 22, 2007) (adopting the rule of *Schanzer* and dismissing Title VII claims brought against supervisors in their official capacities); *Gretzula v. Camden Cnty. Technical Sch. Bd. of Educ.*, 965 F. Supp. 2d 478, 485 (D.N.J. 2013) (explicitly adopting the rule of *Schanzer and Galm*); *Benjamin v. City of Atl. City*, No. 12-CV-3471 JBS, 2014 WL 884569 (D.N.J. Mar. 6, 2014) (explicitly adopting the rule of *Gretzula*). Finding the

---

[2] Prior to *Foxworth* the Eastern District of Pennsylvania adhered to the minority position among the districts in this Circuit that official capacity suits against supervisory employees were permitted under Title VII. *See, e.g.*, *Watkins v. Pa. Bd. of Prob. & Parole,* Civ. 02–2881, 2002 WL 32182088, at *10 (E.D. Pa. Nov. 25, 2002) ("Although supervisors may not be held individually liable, Title VII is a statutory expression of traditional respondeat superior liability . . . . Consequently, supervisors may be sued in their official capacity."); *Timmons v. Lutheran Children & Family Serv. of E. Pa.,* No. 93–CV-4201, 1993 WL 533399, at *5 (E.D. Pa. Dec. 17, 1993) (individual defendant who was a supervisor "may be held liable under Title VII as acting in his official capacity"); *Verde v. City of Philadelphia,* 862 F. Supp. 1329 (E.D. Pa. 1994) (granting a motion to dismiss a Title VII claim against an individual in his individual capacity, but denying the motion to dismiss the claim against the individual in his official capacity.). The holding in *Verde* and its progeny has never been the law in this District, and, as exemplified by *Foxworth*, appears to have been repudiated by the district courts with the Third Circuit's approval.

reasoning of these cases persuasive, Plaintiff's claims under Title VII against Defendants Afzal Mohamed, Mustaq Mohamed, and Mohammed Khan must be dismissed. Defendants' Motion as to Counts XVI, XX, and XXII of the Complaint is GRANTED.

## V. PLAINTIFF HAS WAIVED HIS CLAIMS UNDER THE NJLAD.

Defendants move to dismiss Counts III, IV, VII, X, XIII, XV, XVII, XVIII, and XXI of the Complaint, arguing that Plaintiff waived the right to bring such claims when he filed substantially similar claims under the New Jersey Conscientious Protection Act, N.J.S.A. § 39:19-1 et seq. The Court agrees. CEPA's waiver provision provides that:

> [T]he institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.

N.J.S.A. § 34:19–8. Although not every NJLAD claim is waived by the assertion of a CEPA claim, "retaliation claims under the LAD necessarily fall within the CEPA waiver provision." *See, Ehling v. Monmouth-Ocean Hosp. Serv. Corp*., 961 F. Supp. 2d 659, 672 (D.N.J. 2013); *Ivan v. Cnty. of Middlesex,* 595 F. Supp. 2d 425, 465–66 (D.N.J. 2009). Further, "[t]he waiver provision applies to claims that are 'substantially related' to the CEPA claim . . . . Conversely, claims that do not require a showing of retaliation and require a showing of different proofs are not waived by the institution of the CEPA claim." *Espinosa v. County of Union,* No. 01-CV-3655, 2005 WL 2089916, at *1 (D.N.J. 2005) (internal citations omitted); *see also Casper v. Paine Webber Group, Inc.,* 787 F. Supp. 1480 (D.N.J. 1992) (dismissing RICO and public policy claims of retaliation when Plaintiff also alleged CEPA violations arising out of the same underlying facts).

11

Here, because Plaintiff's claims under the NJLAD arise out of the same facts and circumstances applicable to his NJCEPA claim, and require the same proofs, they properly fall within the CEPA waiver provision.[3] In his Complaint, Plaintiff's claims under the NJLAD incorporate the facts and allegations from the CEPA claim. The same actions by Defendants which allegedly violate NJCEPA are also alleged to violate the NJLAD. In fact, in several instances, Plaintiff's claim under the NJLAD is a word-for-word reiteration of his CEPA claim. *Compare* Compl. at ¶¶ 113-22 (Count XI under NJCEPA) *with id*. at 103-12 (Count X under the NJLAD). Therefore, these claims are "subsumed" under the CEPA waiver provision, and the Court will GRANT Defendants' Motion as to Counts III, IV, VII, X, XIII, XV, XVII, XVIII, and XXI. *See Smith v. Twp. Of E. Greenwich*, 519 F. Supp. 2d 493, 510 (D.N.J. 2007) *aff'd*, 344 F. App'x 740 (3d Cir. 2009) (dismissing NJLAD claim for retaliation and hostile work environment as waived under the CEPA waiver provision).

## VI. CONCLUSION.

For the reasons stated above, Defendants' 12(b)(6) Motion is GRANTED IN PART and DENIED IN PART as follows: i) Defendants' Motion to Dismiss Counts I, VI, and IX due to Defendant Shore Cab's alleged exemption from Title VII is DENIED; ii) Title VII does not provide

---

[3] Indeed, courts have found NJLAD claims waived in analogous situations. *See Zanes v. Fairfield Communities, Inc.,* No. 05-CV-2288, 2008 WL 2780461, at *1 *6 (D.N.J. July 17, 2008) ("[The plaintiff] claims that he was subjected to a hostile work environment and then abruptly fired in retaliation for opposing discriminatory marketing practices prohibited by LAD. Thus, his LAD claim closely resembles, and does not require different proofs from, his CEPA claim."); *Calabria v. State Operated Sch. Dist. for City of Paterson,* No. 06-CV-6256, 2008 WL 3925174, at *6 (D.N.J. Aug. 26, 2008) ("Here, Plaintiffs assert the same protected activity stemming from the March 8, 2004 letter to which they relied upon for their CEPA claim. Plaintiff's NJLAD claim, is, therefore, waived and dismissed.").

for individual liability for Defendants Afzal Mohamed, Mustaq Mohamed, and Mohammed Khan, and Counts XVI, XX, and XXII are DISMISSED; and iii) Plaintiff's claims under NJLAD are duplicative of claims brought under NJCEPA, and Counts III, IV, VII, X, XIII, XV, XVII, XVIII, and XXI are DISMISSED.

Order to follow.

Dated: _____6/19/2014_____                        _____/s/ Freda L. Wolfson_____
                                                  The Honorable Freda L. Wolfson
                                                  United States District Judge